TODD BLANCHE
Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
JENNIFER L. WAIER
Chief Assistant United States Attorney &
Chief, Criminal Division
KEVIN J. BUTLER (Cal. Bar No. 329129)
Chief, Major Crimes Section
JENA A. MACCABE (Cal. Bar No. 316637)
Deputy Chief, Major Crimes Section
Assistant United States Attorneys
1300 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-6495/5046
Facsimile: (213) 894-0141
E-mail: kevin.butler2@usdoj.gov
jena.maccabe@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CARLOS VICTOR MESTANZA CERCADO,<br><br>Defendant. | No. CR 5:25-00198-KK-1<br><br><u>PLEA AGREEMENT FOR DEFENDANT CARLOS VICTOR MESTANZA CERCADO</u> |

1. This constitutes the plea agreement between CARLOS VICTOR MESTANZA CERCADO ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case. This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

## DEFENDANT'S OBLIGATIONS

2. Defendant agrees to:

a. At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to count three of the indictment in United States v. CARLOS VICTOR MESTANZA CERCADO, CR No. 5:25-00198-KK-1, which charges defendant with interference with commerce by robbery in violation of 18 U.S.C. § 1951(a).

b. Not contest facts agreed to in this agreement.

c. Abide by all agreements regarding sentencing contained in this agreement.

d. Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e. Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f. Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g. Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessment.

h. Agree to and not oppose the imposition of the following conditions of probation or supervised release: The defendant shall submit defendant's person and any property under defendant's control, including any residence, vehicle, papers, computer and other electronic communication or data storage devices and media, and effects, to search and seizure at any time of the day or night by any law enforcement or probation officer, with or without a warrant, upon reasonable suspicion that defendant has violated a

condition of supervised release or committed a crime; and if stopped or questioned by a law enforcement officer for any reason, defendant shall notify that officer that defendant is on federal supervised release and subject to search.

i. Defendant agrees that any and all criminal debt ordered by the Court will be due in full and immediately. The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

j. Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all of the documents requested therein, to the USAO by either email at usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial Litigation Section at 300 North Los Angeles Street, Suite 7516, Los Angeles, CA 90012. Defendant agrees that defendant's ability to pay criminal debt shall be assessed based on the completed Financial Disclosure Statement and all required supporting documents, as well as other relevant information relating to ability to pay.

k. Authorize the USAO to obtain a credit report upon returning a signed copy of this plea agreement.

l. Consent to the USAO inspecting and copying all of defendant's financial documents and financial information held by the United States Probation and Pretrial Services Office.

THE USAO'S OBLIGATIONS

3. The USAO agrees to:

a. Not contest facts agreed to in this agreement.

b. Abide by all agreements regarding sentencing contained in this agreement.

c. At the time of sentencing, move to dismiss the remaining counts of the indictment as against defendant. Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed. Defendant further agrees that he may be treated as if he had been convicted of the dismissed charges for purposes of U.S.S.G. § 1B1.2(c), regardless of whether the factual basis below would be sufficient to satisfy all elements of each charge. Defendant waives the right to challenge the sufficiency of the factual basis as to any element of any dismissed charge.

d. At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

NATURE OF THE OFFENSE

4. Defendant understands that for defendant to be guilty of the crime charged in count three, that is, interference with commerce by robbery, in violation of Title 18, United States Code, Section 1951(a), the following must be true: first, the defendant knowingly obtained money or property from or in the presence of a victim; second, the defendant did so by means of robbery; third, the defendant believed that the victim parted with the money or property

because of the robbery; and fourth, the robbery affected interstate commerce.

5. Defendant understands that defendant may be guilty of the foregoing crime even if defendant personally did not commit the act or acts constituting the crime but aided and abetted in its commission. To "aid and abet" means intentionally to help someone else commit a crime. For defendant to be guilty by aiding and abetting, the following must be true: first, someone else committed the crime; second, defendant aided, counseled, commanded, induced, or procured that person with respect to at least one element of the crime; third, defendant acted with the intent to facilitate the crime; and fourth, defendant acted before the crime was completed.

6. Defendant understands that defendant may also be guilty of the foregoing crime even if defendant did not personally commit the acts constituting the crime if defendant willfully caused an act to be done that if directly performed by him would be an offense against the United States. If defendant put in motion or caused the commission of an indispensable element of the offense, he is guilty as if he had committed this element himself.

7. Defendant further understands that each member of the conspiracy is responsible for the actions of the other conspirators performed during the course and in furtherance of the conspiracy. If one member of a conspiracy commits a crime in furtherance of a conspiracy, the other members have also, under the law, committed that crime. Therefore, defendant understands that defendant may be guilty of the foregoing crime if the following is true: first, a person named in count three of the indictment committed the crime as alleged in that count; second, the person was a member of the

conspiracy charged in count two of the indictment; third, the person committed the crime in furtherance of the conspiracy; fourth, the defendant was a member of the same conspiracy at the time the offense was committed; and fifth, the offense fell within the scope of the unlawful agreement and could reasonably have been foreseen to be a necessary or natural consequence of the unlawful agreement.

PENALTIES AND RESTITUTION

8. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1951(a), is: 20 years' imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

9. Defendant understands that defendant will be required to pay full restitution to the victim(s) of the offense to which defendant is pleading guilty. Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim(s) of the offense to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty. In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offense to which defendant is pleading guilty; and (b) any counts dismissed pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts. The government currently believes that the applicable amount of

restitution is at least $100,312,031.54, but the parties recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing. Defendant contends that, before the July 11, 2022 theft, certain victims declared in their transportation contracts with Brinks a total value of less than $10,000,000 for the jewelry that Brinks was to transport, and the USAO disputes that those declarations limit the victims' actual losses. Defendant may present evidence on that issue at the determination of restitution, and the USAO may present evidence of the full amount of the victims' losses.

10. Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

11. Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition. Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or

supervised release in another case and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

12. Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States. Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case. Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is automatic removal from the United States.

FACTUAL BASIS

13. Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty. Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 15 below but is not meant to be a complete recitation of all facts relevant to the

underlying criminal conduct or all facts known to either party that relate to that conduct.

Beginning no later than on or about March 2, 2022, and continuing to at least on or about July 20, 2022, defendant and other co-conspirators agreed to commit a series of thefts and robberies of goods and shipments moving in interstate and foreign commerce, including electronics and jewelry being transported by truck through San Bernardino and Los Angeles Counties and elsewhere. Defendant and his co-conspirators used multiple vehicles to follow truck drivers carrying interstate and foreign shipments to stopping points -- including truck stops and other locations where the drivers stopped and their trucks were left unattended -- and stole the cargo, including by force and threat of force in the presence of the victims. Defendant and his co-conspirators then returned to Los Angeles County with the stolen merchandise to divide up and sell for profit.

On March 2, 2022, defendant and co-conspirators, using multiple vehicles, followed a truck carrying Samsung electronics from Ontario, California, that was to be delivered to another transportation company for shipment out of California. When the truck driver stopped temporarily at a 7-Eleven in Ontario, one or more of the co-conspirators distracted the driver by pretending to need his help translating from Spanish into English so that they could buy a prepaid phone to call Mexico, while others stole Samsung electronics from the truck. One of the decoys stayed on the phone with one of the thieves to avoid getting caught. Defendant and co-conspirators fled with the stolen electronics, which the victims later valued at

approximately $240,573, to a co-conspirator's residence in Los Angeles, California.

On March 11, 2022, defendant and co-conspirators, using multiple vehicles and with a co-conspirator acting as a scout, followed a box truck carrying Apple AirTags that had traveled from China and was being delivered to a warehouse in Fontana, California. When the driver stopped temporarily for food in Fontana, defendant and co-conspirators acted as lookouts in and around the restaurant and stole Apple AirTags from the box truck. Defendant was driving the van into which the stolen merchandise would be loaded. When the box truck driver caught defendant and co-conspirators in the act of stealing the AirTags, a co-conspirator yelled at the driver, "Don't move, or I will fuck you up!" while holding a small knife in his hand. In fear for his safety, the driver did not intervene, and defendant and co-conspirators fled with the stolen AirTags, which the victims later valued at approximately $57,377. Defendant knowingly aided and abetted the obtaining of this property from the presence of the truck driver by means of robbery -- that is, by threatened force, violence, and fear of injury -- and defendant acknowledges that the driver stated he parted with the property out of fear. The robbery affected interstate commerce because, among other reasons, the stolen AirTags had traveled from China and were in transit to a warehouse for further distribution. To facilitate the robbery, defendant also stayed on the phone with a co-conspirator for 87 minutes to communicate about the victim-driver's movements before and during the robbery.

On May 25, 2022, defendant and co-conspirators, using multiple vehicles, drove to a Pilot Flying J truck stop in Fontana intending

to steal from a semitruck; a co-conspirator used a crowbar to break into the truck before defendant and co-conspirators fled. Later that same day, defendant and co-conspirators stole Samsung electronics from a different semitruck parked elsewhere in Fontana that was waiting to be unloaded from an interstate shipment. Defendant and co-conspirators then fled with the stolen electronics, which they had removed by cutting the plastic around the boxes and which the victims later valued at approximately $14,081.54.

On July 8, 9, and 10, 2022, a co-conspirator scouted an international jewelry show in San Mateo, California, communicating by phone with defendant and other co-conspirators to steal the jewelry in transit following the show. On July 10, 2022, defendant and co-conspirators focused on a Brinks semitruck at the jewelry show carrying 73 bags containing millions of dollars of jewelry that had traveled in interstate commerce. When the Brinks truck departed, defendant and co-conspirators coordinated by phone and, from the late hours of July 10, 2022, to the early hours of July 11, 2022, followed the Brinks truck approximately 300 miles from San Mateo to rest stops in Buttonwillow and Lebec, California. On July 11, 2022, defendant and co-conspirators broke the locks on the Brinks truck and stole 24 bags of jewelry, which the victims later valued at approximately $100,000,000, and traveled to East Hollywood with the stolen jewelry. In the days that followed, defendant and other co-conspirators deactivated the cellphone numbers they had used to steal the jewelry from the Brinks truck to try to conceal their identities.

After the indictment against defendant in this case was made public on June 17, 2025, defendant made several internet searches regarding a person wanted by the police, Interpol, and Ecuadorians

(like defendant) traveling to Mexico, El Salvador, Guatemala, Belize, and Canada. Between June 18 and 20, 2025, defendant texted someone about his "stupidities from the past that I'm now paying for" and that he did not know whether the police were after him but that he "still ha[s] to be careful." On June 28, 2025, defendant messaged a South American number on WhatsApp about crossing the U.S.-Mexico border after a "robo grande." On July 1, 2025, defendant was detained at the international airport in Panama City, Panama, during a layover from Guatemala to Ecuador.

SENTENCING FACTORS

14. Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a). Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

15. Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Robbery Base Offense Level: | 20 | U.S.S.G. § 2B3.1(a) |
| Theft Base Offense Level: | 6 | U.S.S.G. § 2B1.1(a)(2) |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under

the Sentencing Guidelines are appropriate. Defendant understands that defendant's offense level could be increased if defendant is a career offender under U.S.S.G. §§ 4B1.1 and 4B1.2. If defendant's offense level is so altered, defendant and the USAO will not be bound by the agreement to Sentencing Guideline factors set forth above.

16. Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

17. Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

WAIVER OF CONSTITUTIONAL RIGHTS

18. Defendant understands that by pleading guilty, defendant gives up the following rights:

a. The right to persist in a plea of not guilty.

b. The right to a speedy and public trial by jury.

c. The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial. Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d. The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e. The right to confront and cross-examine witnesses against defendant.

f. The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g. The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h. Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

WAIVER OF APPEAL OF CONVICTION

19. Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty. Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

WAIVER OF APPEAL OF SENTENCE AND COLLATERAL ATTACK

20. Defendant agrees that, provided the Court imposes a term of imprisonment within or below the range and the criminal history category calculated by the Court, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's

sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7); and any conditions of probation or supervised release agreed to by defendant in paragraph 2 above.

21. Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction. Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

22. This agreement does not affect in any way the right of the USAO to appeal the sentence imposed by the Court.

WAIVER OF RIGHTS CONCERNING PLEA COLLOQUY AND FACTUAL BASIS

23. Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing; (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant

in any action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

Defendant further agrees that this paragraph of the agreement is severable. Thus, defendant's waivers are binding and effective even if, subsequent to defendant's signing this agreement, defendant declines to plead guilty, the Court declines to accept his guilty plea, or, if this agreement is of the type described in Federal Rule of Criminal Procedure 11(c)(1)(A) or (c)(1)(C), the Court rejects this agreement. Defendant also agrees that his waivers are binding and effective even if some other portion of this agreement is found to be invalid by this Court or the Ninth Circuit.

RESULT OF WITHDRAWAL OF GUILTY PLEA

24. Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy

trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

RESULT OF VACATUR, REVERSAL OR SET-ASIDE

25. Defendant agrees that if the count of conviction is vacated, reversed, or set aside, both the USAO and defendant will be released from all their obligations under this agreement.

EFFECTIVE DATE OF AGREEMENT

26. This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

BREACH OF AGREEMENT

27. Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

28. Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge

that was either dismissed or not filed as a result of this agreement, then:

a. Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b. Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

29. Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

30. Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 15 are consistent with the facts of this case. While this paragraph permits both the USAO and defendant to submit full and complete factual

information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

31. Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement. Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

NO ADDITIONAL AGREEMENTS

32. Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

//

//

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

33. The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

TODD BLANCHE
Attorney General

BILAL A. ESSAYLI
First Assistant United States
Attorney

11/9/2026

KEVIN J. BUTLER — Date
JENA A. MACCABE
Assistant United States Attorneys

11-04-26

CARLOS VICTOR MESTANZA CERCADO — Date
Defendant

11-4-26

ADAM AXELRAD — Date
Attorney for Defendant CARLOS
VICTOR MESTANZA CERCADO

## CERTIFICATION OF DEFENDANT

This agreement has been read to me in Spanish, the language I understand best. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

[signature] 11-04-26

CARLOS VICTOR MESTANZA CERCADO Date
Defendant

## CERTIFICATION OF INTERPRETER

I, Victor D. Gonzalez, am fluent in the written and spoken English and Spanish languages. I accurately translated this entire agreement from English into Spanish to defendant CARLOS VICTOR MESTANZA CERCADO on this date.

[signature] 11/4/26

INTERPRETER Date

CERTIFICATION OF DEFENDANT'S ATTORNEY

I am CARLOS VICTOR MESTANZA CERCADO's attorney. I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

A. Axelrad [signature] 11-4-26

ADAM AXELRAD
Attorney for Defendant CARLOS VICTOR MESTANZA CERCADO

Date